## BARTH v. DEUEL.

1. Where it was the intention of both grantor and grantee that the conveyance should be of land on which stood a building, and that was the main inducement to the purchase, but by mutual mistake as to its location the conveyance did not include it, the grantee is entitled to a rescission, and where at the time of the contract she was paying rent for the building to the grantor, who received it as owner, she was entitled to assume that he was such owner and to act accordingly.

2. Though a trust-deed given by the grantee to secure the unpaid purchase money cannot be directly annulled in a suit for rescission to which the trustee is not a party, yet that result, and record evidence thereof, are properly effected by a decree canceling the indebtedness, in view of the policy of legislation in this state (Gen. Stat. § 234), to make record evidence of the payment of a debt equivalent to a release of a security executed according to the formalities for conveyances.

3. A decree denying a rescission and recovery of the amount paid, and enjoining the collection of the unpaid balance, and canceling the notes therefor and the trust-deed, is improper, so far as it attempts to make a new contract and decree specific performance thereof.

4. In such case the judgment should be reversed and remanded, with directions that, on proof that the deed tendered in rescission by plaintiff to defendant conveys free from incumbrance by plaintiff, except the trust-deed given to secure the price, a decree be entered for rescission and for the recovery of the amount paid, and the cancellation of the notes for the price and the trust-deed securing the same.

5. By filing an answer and going to trial on the merits, after the overruling of a demurrer to the complaint, defendant waives the objections of defect of parties defendant and that the complaint is ambiguous, unintelligible and uncertain.

### Appeal from Superior Court of Denver.

ON the 29th day of April, 1882, the defendant, William Barth, conveyed, by special warranty deed, certain premises to the plaintiff, Sarah J. Deuel. In consideration of such conveyance the plaintiff paid to defendant $1,500 cash down, and gave him fifteen promissory notes for $200 each, with interest at one per cent. per month, and made a trust-deed on the premises to secure said notes.

Before the commencement of this action plaintiff paid five of said notes and interest, amounting to the sum of $1,030. She brings this action to recover back the said sum of $2,530 so paid to defendant, and interest thereon, and prays that said deed from the defendant to her, and the notes from her to the plaintiff remaining unpaid, may be rescinded, set aside, and canceled, and for general relief. It appears from the evidence that in April, 1882, plaintiff was occupying a two-story brick building, standing on lots 4 and 5, in block 241, in West Denver, and was paying rent therefor to defendant; that, wishing to buy the premises so occupied by her, the plaintiff went to the defendant to negotiate for the purchase of the same; that in making such negotiations the plaintiff and the defendant each believed, and acted upon such belief, that the building so occupied by the plaintiff stood wholly on the easterly twenty-two feet of said lots 4 and 5; that with this mutual understanding and belief the plaintiff purchased, and the defendant sold to her, the easterly twenty-two feet of said lots 4 and 5, except the parts cut off by the piling of Cherry creek and by the widening of Blake street, and defendant conveyed said premises to plaintiff by his special warranty deed April 29, 1882; that a few months after the making of said conveyance the plaintiff ascertained that but a small portion of said building was on the premises so conveyed to her; that she immediately notified defendant of this fact, and requested him to pay back to her the sum of $2,530 which she had paid to him on account of the purchase of said premises, and offered to reconvey said premises to the defendant, which request defendant refused; that at the time plaintiff was negotiating with defendant for the premises so occupied by her, her knowledge of the facts relating to the location of said building was equal to the knowledge that defendant had of the same facts, and that her means of obtaining information in relation thereto were fully equal to the facilities of the defendant

for gaining such information. On the 26th day of February, 1883, James J. Connelly, as the attorney in fact of the plaintiff, made, executed and tendered to the defendant a quitclaim deed to the premises conveyed by the defendant to the plaintiff on the 29th day of April, 1882. Proof of said deed and tender thereof to defendant was rejected by the court, because the power of attorney to Connelly had not been recorded and was not produced in court. After the evidence was in, and at the close of the argument of counsel for defendant, the plaintiff offered, and the court received in evidence, an instrument in writing, executed by the plaintiff, by which she duly and fully ratified and confirmed the acts of the said Connelly in executing said deed to defendant, and declared said deed to be her voluntary act and deed for the uses and purposes therein set forth, which instrument was duly acknowledged and was attached to the deed to defendant which it ratified, which deed was then received in evidence. The defendant by his pleadings and proof tendered to the plaintiff a deed to an additional twenty-two feet of said lot 4. The effect of this deed, as a conveyance of the land upon which the building stood, as well as the effect of the first deed for the same purpose, is shown by an agreed statement of facts which was adopted by the parties as an amendment to their pleadings, which statement is as follows: "The deed from defendant to plaintiff, of April 29, 1882, conveying to her the easterly twenty-two feet of lots 4 and 5, in block 241, west division of the city of Denver, conveyed to her only a strip of land six feet wide in lot 4, the residue being cut off by the piling of Cherry creek, and only four feet wide of lot 5, the residue of said strip being cut off by the piling of Cherry creek, as mentioned in said deed. The building spoken of in the pleadings, which plaintiff occupied at the time of her purchase, is a two-story brick, and stands — one wall of it — about three feet upon the easterly twenty-two feet of said lots 4 and

5, as conveyed by defendant to her, and the remaining portion of said building on the second strip of twenty-two feet of said lots 4 and 5 of said block, and the building extends back on said lot 5 twelve feet six inches. That the deed now tendered by defendant of a second strip of twenty-two feet of said lot 4, adjoining the easterly strip of twenty-two feet described in his first deed, conveys to plaintiff the whole of the front part of said building, but leaves a portion of said brick building, twelve feet six inches of the rear part thereof, standing upon lot 5, of which she has no title. By the original purchase plaintiff got a portion of said brick building three feet in width only, on the twenty-two feet described in her deed; so far as the same stood on said lot 4. By the new deed now tendered by defendant she gets the whole front of the building; but twelve feet and a half of the rear end of said two-story brick building stands on lot 5, which is not conveyed to her by the deed tendered; said brick building is twenty-one feet five inches wide." The decree of the court denied the prayer of the plaintiff for the rescission of the contract of sale and conveyance of April 29, 1882, and for the recovery against defendant of the money by plaintiff paid to defendant in pursuance of said sale and conveyance; perpetually enjoined defendant from collecting, by suit or otherwise, the said promissory notes' of the plaintiff to defendant, or either of them, then remaining unpaid, and the said notes having been produced in court by the defendant, the court ordered them to be canceled, and the plaintiff to be discharged from any liability thereon. The court further ordered and adjudged that the trust-deed made to secure said notes be released and discharged and the plaintiff be fully reinvested with the title to the premises in said trust-deed described. The court further ordered and adjudged that plaintiff might accept the deed tendered by defendant, in which he conveys to

the plaintiff an additional portion of lot 4. The defendant appealed.

Messrs. HARMON and COVER, for appellant.

Mr. J. P. BROCKWAY, for appellee.

RISING, C. The defendant demurred to the complaint on the grounds — *First*, that it did not state facts sufficient to constitute a cause of action; *second*, for defect of parties defendant; and *third*, that it was ambiguous, unintelligible and uncertain. Upon the overruling of the demurrer defendant filed his answer and went to trial on the merits. By filing an answer and going to trial upon the merits defendant waived the second and third grounds of demurrer, and the first ground is not relied upon in the argument of counsel. All the other assignments of error may be considered under the general assignment that the judgment or decree of the court is contrary to law and the evidence. The question presented for determination is whether the mutual mistake of the parties with reference to the location of the building occupied by the plaintiff at the time of the making of the deed by defendant to her is, under the circumstances of this case, a ground for relief in equity. One of the circumstances to be considered is that the mistake related to a material fact, which constituted the only basis for the payment by plaintiff to defendant of the money sought to be recovered back. The premises conveyed to plaintiff by defendant were materially different from the premises the plaintiff intended to purchase and from the premises defendant supposed he was selling to her. In *Daniel v. Mitchell*, 1 Story, 172–190: "Nothing is more clear in equity than the doctrine that a bargain founded in a mutual mistake of the facts, constituting the very basis or essence of the contract, or founded upon the representations of the sellers, material

to the bargain, and constituting the essence thereof, although made by innocent mistake, will avoid it." In *Marvin v. Bennett*, 8 Paige, 312–321, it is held that equity will give relief in cases of mutual mistake, "where the subject-matter of the sale and purchase is so materially variant from what the parties supposed it to be that the substantial object of the sale and purchase entirely fails." By reason of the failure of the defendant to convey, not only almost the entire building intended to be conveyed, but also a failure to convey anything of material value to the plaintiff, there is a failure of the basis of the contract between the parties, without their assent, and to enforce such an agreement is inequitable. *Miles v. Stevens*, 3 Pa. St. 21–37. Equitable relief will be granted in cases of mistake when the fact concerning which the mistake is made is material to the transaction, affecting its substance and not merely its incidents, and the mistake itself is so important that it determines the conduct of the mistaken parties. 2 Pom. Eq. Jur. § 856. Counsel for appellant contend that under the evidence in this case the plaintiff is not entitled to the relief she demands, by reason of the application of the following claimed legal principles, as stated in the argument for appellant: *First*. Where the means of information are alike open to both parties, and when each is presumed to exercise his own judgment in regard to extrinsic matters, equity will not relieve. *Second*. When the facts are unknown to both parties, or when each has equal and adequate means of information, in such cases, if the party has acted with good faith, equity will not interfere. *Third*. When each party is equally innocent, and there is no concealment of facts, mistake or ignorance is no foundation for equitable interference. The case of *Crowder v. Langdon*, 3 Ired. Eq. 476, is cited in support of the foregoing propositions. An examination of that case will show that but little weight should be given to the case as an authority in support of the propositions contained in the head-notes.

It appears that one of three partners in the mercantile business negotiated with another partner for the purchase of that partner's interest in the partnership; that during said negotiation the partner having the interest for sale produced the books of the firm, and also a paper called the "blue paper," purporting to be a statement of the assets and liabilities of the firm, the figures of which statement were taken from the firm books, and that after adding the sum of $1,500 to the amount of the liabilities, as they appeared from said statement, and deducting the sum of $600 from the assets on account of bad debts, which addition and deduction were made at the instance of the disinterested partner, the statement, as so changed, was taken as the basis of the contract of sale and purchase made by the parties. It turned out that the liabilities of the firm were underestimated in nearly the sum of $2,500, and the purchaser brought an action to rescind the contract and recover back the purchase money paid. The foregoing statement contains all the facts relating to a mistake in the case, and shows that there was no question of mistake to which the principles announced could be applied. Mistake is not ground for relief, unless the mistake is acted upon and forms the basis of the contract, and when it is not acted upon the principles announced have no application, as is shown by the case cited, from which we quote: "If, however, we were satisfied that the plaintiff acted upon the statement contained in the blue paper as the known and declared basis on which he contracted, we should be inclined to grant him relief." The case of *Grymes v. Sanders*, 93 U. S. 55, cited by counsel, turned upon the fact that the mistake with reference to the location of the shaft had not animated and controlled the conduct of the party complaining, as appears from the following statement in the opinion: "The subsequent conduct of the appellees shows that the mistake had no effect upon their minds for a considerable period after its discovery, and then it seems to have been

rather a pretext than a cause." This fact, so stated, brings the case within the principle that, to warrant relief in equity, "the court must be satisfied that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved," announced by the court in that case. The case of *Webster v. Stark*, 10 Lea, 406, cited by counsel for appellant, was determined upon a question of fact relating to the intention of the parties. It was found by the court that the contract of sale made by the defendant to the plaintiff expressed the intention of the parties, and this finding clearly appears from the review of the evidence by the court on pages 412 and 413 of the opinion, which review also shows that there was no mistake as to the lots plaintiff intended to buy, but a mistake made by him as to an extrinsic fact. The case of *White v. Williams*, 48 Barb. 222, was also determined upon a question of fact as to the intention of the parties. The mistake in this case was not in relation to ground intended to be purchased and sold, but in relation to an extrinsic fact relating to said ground.

From this review of the cases cited it will be seen that they have no application to the case at bar. In the case under consideration there is no question but that it was the intention of the plaintiff to purchase the identical twenty-two feet of ground on which the building she occupied stood. The defendant so understood the intention of the plaintiff, and he supposed that the conveyance made by him covered the premises the plaintiff intended to buy. The mutual mistake made by the plaintiff and defendant was in relation to a material fact, and but for the fact of the mistake the plaintiff, certainly, would not have entered into the contract from which she seeks to be relieved, and it is but just to the defendant to presume that he would not have taken the plaintiff's money without intending to give her value therefor. It does not appear that there are intervening rights to prevent the parties from being placed in the same position they

were before the contract was made.    In 1 Story, Eq. Jur. § 138, it is said to be the clearly defined and well established rule, both in England and America, that under such facts as are established by the evidence in this case equity will interfere, in its discretion, in order to prevent intolerable injustice.    In illustration of the doctrine that equity will relieve in such cases, the learned author states the following supposed case:    "If one person should sell a messuage to another, which was at the time swept away by a flood, or destroyed by an earthquake, without any knowledge of the fact by either party, a court of equity would relieve the purchaser, upon the ground that both parties intended the purchase and sale of a subsisting thing, and implied its existence as the basis of their contract.    It constituted, therefore, the very essence and condition of the obligation of their contract."    1 Story, Eq. Jur. § 142.    Under the facts in this case we do not conceive that the question of negligence arises; but, if it is in the case, the evidence does not show such a state of facts as should prevent the plaintiff from obtaining the relief demanded.    At the time of making the contract the plaintiff was paying rent to the defendant for the premises she desired to purchase, and the defendant was receiving such rent as the owner of the premises.    The plaintiff had the right to assume that defendant was the owner of the premises, and to act upon such assumption. 1 Story, Eq. Jur. § 140; 2 Pom. Eq. Jur. § 856; *Quick v. Stuyvesant*, 2 Paige, 84–92.    We therefore conclude that the plaintiff made a case which entitled her to the relief demanded.

This brings us to the consideration of the decree rendered, and we do not think it can be sustained.    In so far as the decree attempts to cancel and annul the trust deed, the court, not having the trustee before it as a party to the suit, had no power to adjudicate directly in relation to that instrument; and in so far as the decree attempts to. do equal and exact justice between the parties, by mak-

ing a new contract for them and decreeing its specific per-
formance, it is erroneous.   The fact that the trustee in
the trust-deed was not made a party to the suit is not of
itself a sufficient cause for denying to the plaintiff the
relief demanded.   A deed of trust to secure an indebted-
ness of the grantor is, in its legal sense, a mortgage, and
statutes relating to the recording and satisfaction of
mortgages are held to be applicable to such deeds of trust.
2 Pom. Eq. Jur. § 995.   As an incident to this character
of a trust-deed, it is held that a payment or release of the
indebtedness which it was given to secure operates as an
extinguishment of the power of sale, and in states where
a mortgage is considered but as a mere lien, a deed of trust
is generally considered as nothing more than a lien.   The
court is authorized to cancel the indebtedness secured by
the trust-deed, and such cancellation must operate as an
extinguishment of the interest of the beneficiary in the
premises conveyed, as well as of the power of sale in the
trustee; and, as the decree of the court may be made a
matter of record, it may thus be made a notice to all the
world, with the same effect as notice by a recorded con-
veyance, that by the extinguishment of the interest of
the beneficiary under the trust-deed such deed was ren-
dered wholly inoperative as a conveyance.   It is the policy
of the legislation in this state to make record evidence of
the payment of the debt equivalent to a release of the se-
curity executed under the formalities prescribed by the
law regulating conveyances.   Gen. St. § 234.   A decree
of a court of competent jurisdiction canceling an indebt-
edness secured by a trust-deed presents a means of mak-
ing record evidence of the fact of such cancellation, and
the legal effect of such cancellation is to release the prem-
ises from the incumbrance placed thereon.   *McNair v.
Picotte,* 33 Mo. 57.   Such decree must be held to operate
as a release of the trust-deed.   While the judgment can-
not be sustained, we do not think it necessary that a new
trial should be had.   The judgment should be reversed

and the cause remanded, with directions that, upon satisfactory proof being made that the deed from the plaintiff to the defendant reconveying to him the premises conveyed to her by defendant conveys the same without incumbrance placed thereon by her, other than said trustdeed, a decree be entered for the plaintiff in accordance with the prayer of her complaint.

STALLCUP, C., concurs.

DE FRANCE, C. I concur in all respects, except as to the propriety and effect of the decree directed. I regard the trustee as a necessary party, in order that the decree may do full justice to all the parties,— place them *in statu quo.*

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment is reversed, with directions to enter a decree in accordance with the foregoing opinion.

*Reversed.*

### ON REHEARING.

Where the record in a suit for rescission of a conveyance of realty does not warrant a recognition of a claim for rents, the parties will be left to a separate action, notwithstanding the rule of equity practice to adjudicate all questions fairly presented.

PER CURIAM. The record presented does not warrant us in recognizing the claim made for rents by ordering an accounting. As at present advised, we have concluded to deny the rehearing, and leave the parties to a separate action in connection with any rights they may claim to have that are not fully adjudicated. Nor do we consider that, under the peculiar facts of this case, such conclusion in any way conflicts with the recognized practice in equity of fully adjudicating all questions fairly involved and presented. The rehearing is denied.

*Rehearing denied.*