No. 18,091.

NEWTON R. TILBURY *v.* O. R. OSMUNDSON.
(352 P. [2d] 102)

Decided May 9, 1960. Rehearing denied May 31, 1960.

Mr. Norman E. Struempler, for plaintiff in error.

Mr. J. Emery Chilton, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

This action was commenced in the trial court to foreclose a deed of trust securing a promissory note given by Osmundson to Tilbury as part of the purchase price of certain resort property described as lots 5 to 9, inclusive, in block 66, Mountain Park Home, situate in Jefferson County, State of Colorado.

Tilbury, who had accepted $1000 in cash and a note for $6000, alleged that the purchaser, Osmundson, had defaulted on the payment of the indebtedness and that there remained unpaid thereon at the time of the suit $5388 principal. Osmundson's answer admitted the note and trust deed and contained a counterclaim for equitable relief for cancellation of the note, for reimbursement of money spent in making improvements to the property, and for general relief. The basis of the counterclaim was that Tilbury did not own and did not transfer all of the property which had been shown to Osmundson and

represented to him as the subject matter of the sale. Osmundson alleged fraud and misrepresentation, but at the trial it was shown that Tilbury believed that he was the owner of the property and that it was all encompassed in the deed which he had received from his predecessor in title and which he had included in the deed executed to Osmundson.

There were no disputed facts at the trial. Neither Tilbury nor Osmundson had surveyed the property in question nor was the plat of the property on record examined. Tilbury at the time he purchased the property, as did Osmundson, relied entirely on the abstract of title and the examination thereof. The title opinion given by the attorney revealed what was factually true so far as the abstract was concerned — that lots 5 to 9, inclusive, in block 66, Mountain Park Home, had been conveyed in an uninterrupted chain since about 1922 down to Tilbury and finally to Osmundson. The difficulty arose over the belief by all of the parties, including the predecessors in title and the neighboring property owners, that the description of lots 5 to 9, inclusive, block 66, encompassed both sides of a country lane known as Columbine Road which every one believed dissected the lots. It was the common understanding that although the larger land area of lots 5 to 9, inclusive, was on the north side of the road, the side lines of said lots extended southward across the road to encompass six cabins on the south side of the road. Seven cabins were involved in the deal, one north of the road and actually situated on the land conveyed. Osmundson testified that the six cabins on the south side of the road which he thought he was buying was the material inducement of the sale as he intended to use the cabins for rental purposes during the summer months. A survey of the property by an engineer who testified at the trial established that lots 5 to 9, inclusive, had their southerly boundary along the north edge of Columbine Road, and that the six cabins on the south

side were situated on lots 9, 10 and 11, block 67 and on lots 22, 1 and 2, in block 68, Mountain Park Homes.

At the conclusion of the trial the court found that Osmundson had paid $1612 on the transaction and that lots 5 to 9, inclusive, of block 66, actually conveyed had a value of $1600, and that, therefore, Osmundson was the owner of lots and block described including the one cabin thereon, and that the balance owed on the note be cancelled, together with the deed of trust. The trial court also awarded Osmundson damages in the amount of $2000 which had been spent in improving the six cabins, title to which is in dispute and reserved for future litigation.

Question to be Determined.

*Is Osmundson entitled to equitable relief in the nature of rescission and for reimbursement of the amount expended by him in improving the cabins which he believed were included in the sale transaction?*

This question is answered in the affirmative.

█ The record discloses that there were several plats of the lots and blocks in question, recorded many years ago. In none of these plats do lots 5 to 9 of block 66 extend south of Columbine Road. Futhermore the testimony of the surveyor shows that the lots could not extend beyond the road. These facts, therefore, are sufficient to support the findings of the court that the transfer did not pass title to the lands or cabins south of Columbine Road situate in blocks 67 and 68. It is the contention of Tilbury that the intent of the parties should govern the amount of the land transferred. This would be true, however, only when there is ambiguity in the language of the description. The words in the deed executed by Tilbury have clear meaning and describe certain specific lands; therefore the rule of interpretation urged by Tilbury would not apply.

█ Land cannot be transferred by the intent of the parties alone, especially when the specific words used state less than what was intended. The deed conveys the

land actually described, regardless of the mistake of the parties. A mistake, even though a material one, renders the deed not void but voidable in equity. 16 Am. Jur. p. 463, §43. The general rule previously announced in Colorado is:

"* * * Equitable relief will be granted in cases of mistake when the fact concerning which the mistake is made is material to the transaction, affecting its substance and not merely its incidents, and the mistake itself is so important that it determines the conduct of the mistaken parties. * * *." *Barth v. Deuel,* 11 Colo. 494, 499, 19 Pac. 471.

In the Barth case the parties had agreed to the sale of a brick building and the lot upon which it stood. The deed described the easterly 22 feet of the pertinent lots when, in fact, these had been partially washed away by Cherry Creek. The main part of the building stood upon the second strip of 22 feet. The court held that since the intention of the parties was to transfer the title to the land under the hotel, there was a material mistake going to the essence of the contract and that the buyer was entitled to rescission.

In *Windecker v. Feigel,* 133 Colo. 122, 292 P. (2d) 187, the parties agreed to the sale of certain lands but through error included additional lands in the deed. When the purchaser tried to enforce his title to the excess acreage this court held that he could not do so, but ordered a reformation of the deed to coincide with the intent of the parties. Reformation is not possible in this case because Tilbury is in no position to convey marketable title to lots 9, 10 and 11, block 67, and lots 22 and 1 and 2, block 68, on which property the six cabins are located.

It is apparent from the record that the six cabins which do not lie on the lands described in the deed to Osmundson make up the greater part of the value of the property intended to be purchased. That Osmundson considered them material in the transaction is established by the fact that he, after closing the deal with Tilbury, took

possession of the cabins and began improvements for the purpose of using them as rental property or immediate sale. The mistaken belief of both parties that the land and the seven cabins all were encompassed in lots 5 to 9 was clearly material to the transaction.

 The judgment of the trial court, instead of rescinding the sale, confirmed the conveyance of lots 5 to 9 and the one cabin thereon and set the purchase price at $1600. In so doing the trial court wrote a new agreement for the parties, giving Osmundson about one-third of what he intended to buy and forced Tilbury into a sale of a third of what he thought he owned and what he intended to sell. If rescission is a proper remedy — and we hold it is — it must be a rescission of the whole. The contract between the parties was not divisible. It was one single transaction. See *Barth v. Deuel, supra,* and 109 A.L.R. 1032. To divide the land in this case would greatly reduce the value of the parts below that of the whole. This is not in conformity with equity and does not place the parties in status quo.

 Another contention of Tilbury is to be noted. He urges that he had clear title to this land by reason of adverse possession under C.R.S. '53, 118-7-9. He offered in evidence records showing that he and his predecessors in title paid taxes on the entire property, including the improvements, on both sides of Columbine Road for the entire period of seven years. Tilbury failed to show color of title to the land and six cabins not included in the description, hence cannot establish title under the statute. None of the deeds in the chain of title conveyed more than lots 5 to 9 in block 66, and, therefore, cannot be color of title to that area lying south of the road. Tilbury also claimed adverse possession for more than eighteen years. It may be that after lengthy litigation he may establish title by adverse possession in himself, but the title he purported to convey to Osmundson is not presently marketable. In *Federal Farm Mortgage v. Schmidt,* 109 Colo. 467, 126 P. (2d) 1036, it was

noted that a marketable title should be "fairly deducible of record and not depending on matters resting in parol." Since litigation, directed to any and all persons known and unknown who may claim some title or interest in lots 9, 10 and 11, block 67, and lots 22 and 1 and 2, block 68, is inevitable, neither Tilbury nor any of his predecessors is in position to transfer title to the land and cabins south of Columbine Road at this time. It is a general rule that a purchaser of land is not required to accept title which invites or exposes him to litigation. 57 A.L.R. 1301, note 2.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment rescinding the transaction and returning to Osmundson the amount paid Tilbury, to-wit $1610, together with interest thereon. As to the $2000 claimed by Osmundson for improvements put into the six cabins, we are not satisfied with the state of the record in that regard. There was some indication that Osmundson and his family had had some use of the cabins and that a party who did some work for Osmundson in improving the cabins also had been allowed to live therein for some period of time. Apparently the court in arriving at the amount claimed by Osmundson did not make a determination of the proper offset for use and occupancy by Osmundson and others before the suit arose. So as to this phase, the cause is remanded for proceedings for determination by the court as to whether there is any proper off-set against the claimed expenditures for improvements.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE HALL concur.