CHATFIELD EAST WELL COMPANY, LTD., Applicant–Appellant,

v.

CHATFIELD EAST PROPERTY OWNERS ASSOCIATION; The State and Division Engineers for Water Division No. 1; George McMakin; Ronald Ralph Martinez; Verna A. Pope; Valentine and Gloria Poljanec; Thomas G. Bettinger; Kenneth Stramel and Marcia Thomas–Stramel; Keith and Valerie A. Lehmann; Loye and Dawna Williams; Frederick S. Walz; John and Valorie Havercamp; David and Jennet White; Mitchell and Margaret Koppel; Richard and Kathleen Dunham; Gary and Marcia White; John and Sharon Tracey; Daniel and Holly Bohlen; Darvin and Joanne Robertson; J. Roy White; Kenneth Walter, Sr.; Paul and Mary Susan Gibboney; Gary and Donna L. Ross; Frank A. and Sally A. Moragas; Michael A. Gilsdorf; Al and Kay Johnstone; Donald G. and Alberta J. Macumber; David R. Weilage; Ivan R. Jones; John P. Gorzelanski; Jerald L. and Bette F. Cox; Susan Perez; Robert W. O'Brien; Merrilee S. Ellis; William Matthias, Jr.; Diana D. Davis; Phillip R. and Marjorie A. Kaspar; Terry L. and Linda M. Ohlsen; Gary L. McNee; Veryl and Margaret Moser; James P. and Leslee J. Masolotte; James Thompson; David G. Feldman; Anthony L. Zalatan; Harold Dale Slaughter, Jr.; Larry and Sandra Johnson; Joseph R. Manning; Vicky Christopher; John and Nancy Polak; Bud and Mary Lou McNemee; David and Rhonda Franklin; Larry and Noel McCain; Theresa W. Bayani; Donald N. Lascody; Centennial Water and Sanitation District; Linda and Arthur Seely; Louis and Mary Gross; Timothy and Joann Stover; Robert L. Jones; STM Mortgage Co.; Duane and Alice Dunn; James R. Hoagland; Ron Koch; Charles and Shirley Warren; Robert Kennedy; Roger and Carole Henning; James Craig McBride; Michael and Barbara L. Troxel; Rodney R. Green;

Timothy and Cheryl Ludwig; Farmers Reservoir and Irrigation Company; Burlington Ditch Reservoir and Land Company; Brenda Winberg; Patrick H. Fieldman, and Michael R. Lingle, Objectors–Appellees.

No. 97SA52.

Supreme Court of Colorado, En Banc.

April 20, 1998.

1262

Holly I. Holder, P.C., Holly I. Holder, Margaret O'Donnell, Petrock & Fendel, P.C., Frederick A. Fendel, III, Denver, for Applicant–Appellant.

White & Jankowski, David F. Jankowski, Austin C. Hamre, Denver, for Objector–Appellee Chatfield East Property Owners Association.

Grant, Bernard, Lyons & Gaddis, a Professional Corporation, Steven P. Jeffers, Longmont, for Objector–Appellee George T. McMakin.

Moses, Wittemyer, Harrison and Woodruff, P.C., David L. Harrison, Veronica A. Sperling, Gilbert Y. Marchand, Jr., Boulder, for Objector–Appellee Centennial Water & Sanitation District.

Gale Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Joseph C. Smith, Jr., Deputy Attorney General, Lee E. Miller, First Assistant Attorney General, Natural Resources Section, Denver, for Objector–Appellee State and Division Engineer, Water Division No. 1.

Justice HOBBS delivered the Opinion of the Court.

This appeal is from an order of the District Court for Water Division 1 (water court) dismissing the application of the Chatfield East Well Company (Well Company) for a decree to extract and use 332 acre feet of ground water per year from the Arapahoe aquifer, one of the Denver Basin aquifers underlying the Chatfield East Subdivision (subdivision).[1] The Well Company claims the water based on deeds purporting to reserve the ownership of nontributary ground water underlying the subdivision when the Chatfield East Development Company (Development Company) conveyed lots to the homeowners. The Development Company subsequently quitclaimed any rights it had in the ground water to the Well Company. The water court dismissed the Well Company's application. We affirm.

We hold that Denver Basin aquifer water is a public resource, the ownership of which cannot be reserved in a deed conveying the surface estate to another person. Under the plain language of the deeds, the Development Company reserved at most the inchoate right to extract and use "underground nontributary water" under the subdivision. The state engineer and the water court acted within their authorities in determining that the Arapahoe aquifer water under the subdivision is not nontributary.[2] The deeds did not

---

1. The Well Company presented the following issues for review:
 1. Whether the water court has jurisdiction to try title to water rights.
 2. Whether the water court properly ignored the intent of the grantor in construing the deed reservations.
 3. Whether Senate Bill 74 (1996) modifying the definition of "nontributary groundwater" applies retroactively to this 1993 application.
 4. Whether parties benefiting from a decree may attack its validity.
 5. Whether the State Engineer must afford a permit holder notice and an opportunity to be heard prior to revoking a well permit.

2. The General Assembly has chosen a water use system for the four Denver Basin bedrock aquifers by which water is classified and administered as either "nontributary," see § 37–90–103(10.5), 10 C.R.S. (1997), or "not nontributary." See § 37–90–103(10.7), 10 C.R.S. (1997). Ground water that is tributary to a natural stream is subject to the system of prior appropriation governing surface water. In contrast, Denver Basin bedrock water is distributed through a statutory system involving ownership of the land overlying the aquifer. This statutory system for vesting rights in Denver Basin water is the subject of our analysis in sections II(C)(1) & (2), infra.

withhold from the homeowners their inchoate right to use the not nontributary water under their lots. The homeowners have not consented to the Well Company's application. Accordingly, the water court correctly dismissed the application.

## I.

The dispute in this case is primarily between a water company and residents of a subdivision. The subdivision is located in northern Douglas County near the Chatfield Reservoir and covers approximately 600 acres of land. The Development Company divided the property into 103 individual lots, each consisting of about four acres, with approximately 130 acres of common area. The Development Company sold the lots to various individual buyers between 1978 and 1981, and conveyed the common areas to the Chatfield East Property Owners Association (POA), which consists solely of the homeowners.

All of the deeds to the homeowners included the following language: "Reserving unto the Grantor all underground *nontributary water* and Grantees hereby consent to the use of said water upon any land or area, regardless of where located." (Emphasis added.) The Development Company quitclaimed any interest it had in the ground water to the Well Company in 1992.

Three of the four bedrock aquifers of the Denver Basin underlie the subdivision: the Denver aquifer, the Arapahoe aquifer, and the Laramie–Fox Hills aquifer. The fourth water bearing formation, the Dawson, does not exist below the property. Water in the Denver Basin aquifers is a nonrenewable, exhaustible resource governed by the Groundwater Management Act. *See* §§ 37–90–102 to –143, 10 C.R.S. (1997).

As part of the subdivision approval process, a developer is required to provide "adequate evidence that a water supply that is sufficient in terms of quality, quantity, and dependability will be available to ensure an adequate supply of water for the type of subdivision proposed." § 30–28–133(3)(d), 10 C.R.S. (1997). In this case, the Development Company took initial steps in the water court

to develop a plan for the new community's water supply. Under the Development Company's plan, the individual homeowners would supply themselves with water from small capacity wells drilled into the Denver aquifer. Since an augmentation source to replace depletions to the natural stream system would be required for the homeowners to operate their wells, the Development Company proposed to change a surface right from its historic irrigation use for this purpose.

However, in its decree of May 15, 1978, the water court found the yield of the surface right to be insufficient and added an augmentation well to be constructed into the "nontributary aquifer known as the Arapahoe formation." However, the resume notice accompanying the Development Company's application did not identify that ground water would be an augmentation source, nor did it notice any claim for nontributary ground water.

At no time thereafter did the Development Company obtain a well permit or complete an Arapahoe aquifer well. Instead, it applied for and received a well permit for a Laramie–Fox Hills augmentation well; the prior decree was amended, pursuant to resume notice, to substitute the Laramie–Fox Hills well for the uncompleted Arapahoe well. The Development Company transferred its interests in the augmentation decree and well to the POA for operation in connection with the small capacity wells constructed by the homeowners.

In December of 1993, a year after it acquired the quitclaim deed from the Development Company, the Well Company filed an application with the water court for a decree recognizing its right to withdraw and use what it described as "underground nontributary water" of the Arapahoe aquifer. It proposed to construct three wells of approximately 300 gallons per minute per well for municipal, domestic, industrial, commercial, fire protection, irrigation, stock watering, recreational, fish and wildlife preservation and propagation, and other beneficial uses.

An application for a decree to extract and use Denver Basin water may be filed in water court with or without a well permit

application having been made to the state engineer;[3] like the state engineer, the water court is required to apply the standards of the Groundwater Management Act. *See* § 37–90–137(6); §§ 37–92–302 to –305, 10 C.R.S. (1997). The water court must consult with the state engineer regarding the decree application and give presumptive effect to the state engineer's findings of fact. *See* § 37–92–302(2)(a); § 37–92–305(6)(b), 10 C.R.S. (1997).

Water in the Denver Basin aquifers is regulated as nontributary or not nontributary, depending on the aquifer characteristics and the applicable legal standards. Under section 37–90–103(10.5),[4] Denver Basin aquifer water is nontributary if its withdrawal will not, within one hundred years, deplete the flow of a natural stream at an annual rate greater than one-tenth of one percent of the annual rate of withdrawal. On the other hand, under section 37–90–103(10.7),[5] aquifer water is not nontributary if its withdrawal will cause a depletion in excess of that amount.

An applicant for recognition of a right to use ground water in the Denver Basin aquifers, whether nontributary or not nontributary, cannot receive a well permit or decree unless he or she is the overlying landowner or has the landowner's consent as provided in section 37–90–137(4)(b), 10 C.R.S. (1997). Neither the Development Company nor the Well Company owned any land in the subdivision when the Well Company filed its application for a decree with the water court, nor had they completed a well into the Arapahoe aquifer, nor had they obtained the consent of the homeowners to the application. In asserting its entitlement to the ground water, the Well Company relied solely on the effect of its quitclaim deed from the Development Company.

The State and Division Engineers, the POA, and many of the individual lot owners in the subdivision filed statements of opposition to the application. Pursuant to the water court consultation provision of section 37–92–302(2)(a), the state engineer found the water underneath the subdivision to be not nontributary instead of nontributary.

The Well Company filed a motion for summary judgment, alleging that the parties and the court were bound by the 1978 augmentation decree's description of the Arapahoe aquifer as "nontributary." The POA and one of the individual property owners filed cross motions for summary judgment. In denying these motions, the water court found that the 1978 augmentation decree's reference to the Arapahoe aquifer as nontributary did not constitute a valid adjudication of the water as nontributary because of defective resume notice. The water court further found that although the augmentation decree was amended later with proper notice to substitute the Laramie–Fox Hills well for the Arapahoe well, the amended decree's reference to the "nontributary" Arapahoe aquifer did not constitute an adjudication in regard to that issue.

At trial in September and November of 1996, the Well Company sought to rebut the state engineer's determination that the Arapahoe aquifer underlying the subdivision was

---

**3.** In contrast, a permit to extract tributary water outside of a designated ground water basin first requires a well permit application to the state engineer, who conducts an analysis to determine whether unappropriated water is available and the permit can be issued without injury to other water users, *see* § 37–90–137(2), 10 C.R.S. (1997); if issues of injury must be addressed the state engineer will deny the permit and the applicant then proceeds to the water court for an adjudication. *See* § 37–92–305, 10 C.R.S. (1997).

**4.** § 37–90–103(10.5) states:

"Nontributary ground water" means that ground water, located outside the boundaries of any designated ground water basins in exis-

tence on January 1, 1985, the withdrawal of which will not, within one hundred years, deplete the flow of a natural stream ... at an annual rate greater than one-tenth of one percent of the annual rate of withdrawal.

**5.** § 37–90–103(10.7) states:

"Not nontributary ground water" means ground water located within those portions of the Dawson, Denver, Arapahoe and Laramie–Fox Hills aquifers that are outside the boundaries of any designated ground water basin in existence on January 1, 1985, the withdrawal of which will, within one hundred years, deplete the flow of a natural stream ... at an annual rate of greater than one-tenth of one percent of the annual rate of withdrawal.

not nontributary. It provided evidence that the connection between the aquifer and the stream had been broken by a lowering of the water table due to ground water pumping. The water court ruled this evidence to be ineffective based on Senate Bill 96–74, codified at section 37–90–103(10.5). This legislation amended the Groundwater Management Act to provide that not nontributary water in the Denver Basin cannot become nontributary as a result of well pumping that drops the aquifer's hydrostatic pressure below the alluvium of an adjacent stream. *See id.*

At the conclusion of the Well Company's case, the water court dismissed the application pursuant to C.R.C.P. 41(b)(1). The water court found and concluded that (1) the state engineer properly declared the water in the Arapahoe aquifer underlying the lots to be not nontributary; (2) the reservation in the Development Company's deeds to the homeowners pertains only to "nontributary water;" (3) Senate Bill 96–74 applies to the case and is not unconstitutional as applied; and (4) the Well Company lacked the consent of the homeowners to extract and use the not nontributary water, contrary to section 37–90–137(4)(b). We uphold dismissal of the Well Company's application.

## II.

We first analyze the Well Company's theory of ownership to Arapahoe aquifer water; as this theory is clearly contrary to Colorado water law, we reject it. Second, we hold that the water court had jurisdiction over the application and correctly concluded that the Development Company deeds reserved no right to extract and use not nontributary water, thereby conveying none to the Well Company through the quitclaim deed. Finally, since the homeowners have the right to seek a well permit or decree for the not nontributary water underlying their land, and they have not consented to the Well Company's application, the water court properly dismissed the application.

## A.

### Ownership Of Nontributary Water

The Well Company's water court application requests "a quantification and adjudication of its right to the nontributary groundwater in the Arapahoe aquifer underlying the Land and Applicant's right to develop and use said groundwater under the law." The application also recites that the Well Company is the "sole owner of all of the right, title and interest" to all Arapahoe aquifer water under the subdivision. The Well Company insists in its briefs that it "intended to reserve all the groundwater to which it was entitled," and "took title to these water rights by deed from the Chatfield East Development Company." We reject the Well Company's theory of water reservation, ownership, and title.

■ All surface and ground water in Colorado is a public resource.[6] "Colorado and the other western states derived their authority to develop a system of water law from the federal government, which once owned substantially all lands now within the boundaries of those states." *State v. Southwestern Colo. Water Conservation Dist.*, 671 P.2d 1294, 1304 (Colo.1983). By means of public land and mining legislation, Congress severed water from other property interests in land, consigning the establishment of water rights to the states while also retaining its continuing power to establish reserved water rights under the laws of the United States. *See California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 163–64, 55 S.Ct. 725, 731, 79 L.Ed. 1356 (1935)(waters of the public domain are "publici juris, subject to the plenary control of the states"); *United States v. City & County of Denver*, 656 P.2d 1, 17 (Colo.1982)(McCarran Amendment adjudication of federal reserved water rights and state appropriative rights of federal agencies).

■ In determining the nature and extent of the state's authority over water re-

---

**6.** The generous standing typically accorded to Colorado residents in water matters by Colorado's adjudication law flows from the public nature of this resource. *See generally Shirola v.* *Turkey Cañon Ranch Ltd. Liab. Co.*, 937 P.2d 739, 747 (Colo.1997)(any person may file a statement of opposition and hold the applicant to a standard of strict proof).

sources within its boundaries, we said in *Southwestern*, 671 P.2d at 1307, that:

> [F]ederal statutes, as interpreted by the United States Supreme Court, recognize Colorado's authority to adopt its own system for the use of all waters within the state in accordance with the needs of its citizens, subject to the prohibitions against interference with federal reserved rights, with interstate commerce, and with the navigability of any navigable waters.[7]

In that case, we then proceeded to distinguish how a right to use nontributary ground water differs from a prior appropriation water right. *See id.* at 1309.

 Waters of the natural stream, including tributary ground water, belong to the public and are subject to use under Colorado's constitutional prior appropriation doctrine and implementing statutes. *See* Colo. Const. art. XVI, §§ 5 & 6; §§ 37–82–101 to –106, 10 C.R.S. (1997). Rights of use thereto become perfected property rights upon application to beneficial use. *See Taussig v. Moffat Tunnel Water & Dev. Co.*, 106 Colo. 384, 393, 106 P.2d 363, 367 (1940).

 In contrast, the right to use water in designated ground water basins, nontributary water outside of designated ground water basins, or any Dawson, Denver, Arapahoe, or Laramie–Fox Hills ground water outside of a designated ground water basin, is governed by the provisions of the Groundwater Management Act. *See* § 37–90–101 to –143, 10 C.R.S. (1997). Ground water located in designated basins is subject to a modified system of prior appropriation administered by the ground water commission. *See* §§ 37–90–104 to –135, 10 C.R.S. (1997); *see also Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212 (Colo. 1996). Use of nontributary ground water and Denver Basin aquifer water outside of designated ground water basins is subject to the provisions of section 37–90–137(4).

 Regardless of whether water rights are obtained in accordance with prior appropriation law, or pursuant to the Ground Wa-

ter Management Act, no person "owns" Colorado's public water resource as a result of land ownership. Although in *Whitten v. Coit* we made oblique reference to the landowner having a property interest in the water in the soil, 153 Colo. 157, 174, 385 P.2d 131, 140 (Colo.1963), we subsequently clearly rejected the theory that a landowner's property rights encompass ownership of ground water. *See Southwestern*, 671 P.2d at 1317. We recognized that when Congress elected to patent land separately from water and to allow the states to legislate with respect to water, as they might choose in the public interest, it made no distinction between tributary and nontributary waters. *See id.*

 In *Bayou Land Co. v. Talley*, 924 P.2d 136, 146–47 (Colo.1996), we reiterated that a right to use nontributary ground water outside of a designated basin is purely a function of statute and landowners do not have an absolute right to ownership of water underneath their land. Rather, landowners have an inchoate right to extract and use the nontributary water in accordance with section 37–90–137(4). *See id.* at 148. We held that

> [t]he right does not vest until the landowner or an individual with the landowner's consent constructs a well in accordance with a well permit from the state engineer and/or applies for and receives water court adjudication. Until vesting occurs, the right to extract nontributary ground water is subject to legislative modification or termination.

*Id.* at 149.

 The Well Company's theory of ownership and title to nontributary water is clearly contrary to law, and we reject it. Colorado law allows for the vesting of water use rights, not water ownership reservations. Regardless of what the parties intended, one cannot transfer property one does not own. *See Tilbury v. Osmundson*, 143 Colo. 12, 15–16, 352 P.2d 102, 104 (1960) ("Land cannot be transferred by the intent of the parties alone, especially when the specific words used state

---

7. Of course, Colorado is also bound to comply with the terms of the interstate compacts and equitable apportionment decrees to which it is a

party. *See Simpson v. Highland Irr. Co.*, 917 P.2d 1242, 1247–48 (Colo.1996).

less than what was intended. The deed conveys the land actually described, regardless of the mistake of the parties.").

Under the facts of this case, the Development Company when it owned the land had an inchoate statutory right to extract and use Denver Basin aquifer water. It did not own a portion of the state's water resource by virtue of being a landowner. In order to establish a water right in the Arapahoe aquifer, the Development Company had to perfect its use right in compliance with section 37–90–137(4). *See Bayou Land,* 924 P.2d at 148.

### B.

### *Water Court Jurisdiction*

Relying on its reserved water theory, the Well Company characterizes the homeowners' opposition to its application as an ownership or title dispute as to which the water court lacks jurisdiction.

 A water right is a right of use. *See Town of Sterling v. Pawnee Ditch Extension Co.,* 42 Colo. 421, 426, 94 P. 339, 340 (1908). An action to determine the ownership of, or title to, a water right between disputing parties, including through a quiet title action, is within the general jurisdiction of the district courts. *Crystal Lakes Water and Sewer Ass'n v. Backlund,* 908 P.2d 534, 540 (Colo.1996). In contrast, adjudication of the right to use water is a water matter within the exclusive jurisdiction of the water judge. *See id.*

 Here, the Development Company did not obtain a vested water right because it did not complete a well into the Arapahoe aquifer or obtain a decree. The quitclaim deed therefore conveyed no vested right to the Well Company. In the absence of a vested right to use the water, there can be no title or ownership dispute over who owns such a right. The Well Company mistakenly relies on language in *Dallas Creek Water Co. v. Huey,* 933 P.2d 27, 42 (Colo.1997), which stated that "[t]he special jurisdiction of the water court does not extend to *title and ownership disputes regarding water rights;*

this jurisdiction is vested in the District Court." (Emphasis added.)

Although in *Southwestern,* 671 P.2d at 1315, we held that rights to nontributary water could not be adjudicated by water judges, the General Assembly immediately responded with Senate Bill 439, *see* ch. 516, sec. 1, § 37–92–203(1), 1983 Colo. Sess. Laws 2079, 2079. Section 37–92–203(1), 10 C.R.S. (1997), now plainly confers upon the water judge jurisdiction to determine nontributary water use rights:

> There is established in each water division the position of water judge of the district courts of all counties situated entirely or partly within the division. Said district courts collectively acting through the water judge have exclusive jurisdiction of water matters within the division.... *Water matters include determinations of rights to nontributary ground water outside of designated ground water basins.*

(Emphasis added.) Indisputably, the Well Company filed an application claiming a right to use nontributary ground water; the water court acted within its jurisdiction in adjudicating this claim.

### C.

### *Consent Of The Overlying Landowner To Use Of Denver Basin Aquifer Water*

Primarily through the adoption of Senate Bills 5 and 96–74, the legislature amended section 37–90–137(4) to define the legal standards for issuing well permits and decrees for the use of Denver Basin aquifer water. The General Assembly intended by these legislative enactments to conserve this nonrenewable resource for beneficial use by overlying landowners.

#### 1. *Senate Bills 5 and 96–74*

In *Fundingsland v. Colorado Ground Water Comm'n,* 171 Colo. 487, 496, 468 P.2d 835, 839 (1970), we recognized that "[u]nderground water basins require management that is different from the management of surface streams and underground waters tributary to such streams." Such management is particularly appropriate with regard to bedrock aquifers, from which water might

otherwise be withdrawn at "a rate in excess of the annual recharge creating what is called a mining condition." *Id.*

By means of Senate Bill 5, *see* ch. 285, sec. 3, § 37–90–137, 1985 Colo. Sess. Laws 1160, 1161–1166, the General Assembly subjected Denver Basin ground water, whether nontributary or not nontributary, to the separate water use system of section 37–90–137(4) and required the state engineer to promulgate rules for use of this water under section 37–90–137(9)(b). *See Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1111 (Colo.1990). Senate Bill 5 further required the water conservation board to conduct studies of the state's water resources, including the Denver Basin aquifers. *See* ch. 285, sec. 8, § 37–60–115(3), 1985 Colo. Sess. Laws 1160, 1169.

In Senate Bill 96–74, *see* ch. 258, sec. 2 & 3, § 37–90–137 & 137.5, 1996 Colo. Sess. Laws 1360, 1361–65, the legislature established additional requirements and proscriptions in regard to the use of not nontributary Denver Basin water and commissioned a special water committee to investigate Denver Basin and South Platte Basin ground water and surface water issues.

Through the standards it has imposed with regard to the Denver Basin aquifers, the General Assembly has evidenced two primary concerns.[8] First is the concern about diminishment of the historically available supply of the South Platte River system through well pumping. This concern is addressed by the replacement provision applicable to well permits for nontributary water and the augmentation requirement applicable to decrees for not nontributary water.[9] Second is the General Assembly's concern that the Denver Basin aquifer water is of "great economic importance" to the overlying landowners, § 37–90–103(10.5), and therefore should remain available for their present and future use.

Thus has the General Assembly recognized that new communities, individual homeowners, and other landowners may place heavy dependence on this finite resource. As water levels are lowered and a particular aquifer becomes depleted in the area, the landowners may find it necessary to drill a replacement well deeper into the formation or proceed into another aquifer underlying the land. Though the pro-rated life of the original permit is 100 years, with a maximum of one percent extracted per year, there can be no guarantee that the well's water source will actually be sustained for the entire century. Without an adequate water supply, the value of the overlying land estate may become greatly devalued at some point in the future. This explains why the homeowners contest the Well Company's application so vigorously.

The General Assembly and the courts of this state have often reinforced the policy of keeping the public water resource available to those who can and will use it beneficially, as opposed to those who wish to speculate in its value and price. *See, e.g.,* §§ 37–92–

---

**8.** These concerns are reflected in section 37–90–102(2), 10 C.R.S. (1997), which provides:

The general assembly recognizes the unique, finite nature of nontributary ground water resources outside of designated ground water basins and declares that such nontributary ground water shall be devoted to beneficial use in amounts based upon conservation of the resource and protection of vested water rights.... To continue the development of nontributary ground water resources consonant with conservation shall be the policy of this state. Such water shall be allocated as provided in this article upon the basis of ownership of the overlying land....

**9.** As a result of Senate Bill 5 and Senate Bill 96–74, the users of nontributary Denver Basin aquifer water can be required, by means of a state engineer-issued well permit, to relinquish up to two percent of the annual withdrawal back to the natural stream, *see* § 37–90–137(9)(b), 10 C.R.S. (1997). In contrast, users of not nontributary Denver Basin water *must* obtain an augmentation decree from the water court and replace to the surface stream an amount of water equal to at least four percent of the annual withdrawal if the wells are located more than one mile from the aquifers' connection to the stream. *See* § 37–90–137(9)(c)(I); *see also State Eng'r v. Castle Meadows, Inc.,* 856 P.2d 496, 499 (Colo.1993). If the wells are located within one mile of the contact zone, their operation must occur under an augmentation decree which addresses injury to surface rights in addition to the four percent return obligation. *See* § 37–90–137(9)(c)(I). The decreed augmentation obligation may continue after cessation of well pumping, for as long as necessary to prevent injury to prior appropriators.

305(9)(a) & (b), 10 C.R.S. (1997); *Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co.*, 197 Colo. 413, 417, 594 P.2d 566, 568 (1979). Even though Denver Basin ground water is managed differently from waters of the natural stream, the Groundwater Management Act mirrors the anti-speculation, beneficial use, non-waste precepts of Colorado water law.

### 2. Effect Of Deeds

The legislature anticipated that the beneficial use of section 37–90–137(4) water would be made directly by the overlying farmer, homeowner, or business; or by a municipal, quasi-municipal, or community water system which holds out service to the landowner. *See* §§ 37–90–137(4)(b) & (8).[10] Accordingly, landowners must be provided with notice of a Denver Basin well permit application to the state engineer, *see* § 37–90–137(4)(b.5)(I), 10 C.R.S. (1997), or a decree application to the water court, *see* § 37–92–302(2)(b), 10 C.R.S. (1997); by necessary implication of these provisions, the landowners have standing to contest the application in order to protect their own interest in using the water. Section 37–90–137(4)(b)(I) limits annual withdrawals to one percent a year based upon an aquifer life of one hundred years. Section 37–90–137(4)(b)(II) provides (1) that the quantity of allowable withdrawal is calculated according to the surface area of

land owned, and (2) that the applicant must be the landowner or a person who has the landowner's express or statutorily implied consent.[11]

We have stated that "the right to withdraw nontributary ground water ... is presumed to pass with the land either in a deed or a deed of trust unless explicitly excepted from the conveyance instrument." *Bayou Land*, 924 P.2d at 150. If the water court had found the water underneath the subdivision to be nontributary, the issue then before the court would have been whether the deed language could reserve to the developer of a subdivision, who has a duty to demonstrate an adequate water supply for that subdivision, an inchoate right to use the water off of the overlying land and not for the benefit of the subdivision. However, whether or not the deed language properly reserved the inchoate right to extract and use nontributary water, a matter we need not and do not decide here, it did not retain this right in regard to not nontributary water, and the water court found that the Well Company had not sustained its burden of proving that the water sought to be decreed is nontributary.[12]

Whether Denver Basin aquifer water underlying a particular parcel of land is nontributary or not nontributary is determined by the state engineer when reviewing

---

10. Section 37–90–137(8) provides:
 [W]herever any existing municipal or quasi-municipal water supplier is obligated either by law or by contract in effect prior to January 1, 1985, to be the principal provider of public water service to landowners within a certain municipal or quasi-municipal boundary in existence on January 1, 1985, said water supplier may adopt an ordinance or resolution ... which incorporates ground water from the Dawson, Denver, Arapahoe, or Laramie–Fox Hills aquifers underlying all or any specified portion of such municipality's or quasi-municipality's boundary into its actual municipal service plan.... Upon the effective date of such ordinance or resolution, the owners of land which overlies such ground water shall be deemed to have consented to the withdrawal by that water supplier of all such ground water....

11. Section 37–90–137(4)(b)(II) states:
 [T]he amount of such ground water available for withdrawal shall be that quantity of water,

exclusive of artificial recharge, underlying the land owned by the applicant or underlying land owned by another:
(A) Who has consented in writing to the applicant's withdrawal; or
(B) Whose consent exists by virtue of a lawful municipal ordinance or a quasi-municipal district resolution in effect prior to January 1, 1985, and which consent was the subject of a water court application for determination of nontributary ground water rights filed by the affected municipality or quasi-municipal district prior to January 1, 1985; or
(C) Who shall be deemed to have consented to the withdrawal of ground water pursuant to the provision of subsection (8) of this section.

12. Under Colorado law, no ground water is presumed to be nontributary; the person asserting that water is nontributary bears the burden of proof. *See Safranek v. Town of Limon*, 123 Colo. 330, 334, 228 P.2d 975, 977 (1951).

a well permit application or by the water court in ruling on a water court decree application. This basic and often key issue is a mixed question of fact and law. Making this determination necessarily involves the characteristics of the aquifer in relation to the legal standards of the Groundwater Management Act, the Water Right Determination and Administration Act, *see* § 37–92–101 to – 602, 10 C.R.S. (1997), and the applicable state engineer regulations. *See* Denver Basin Rules, 2 C.C.R. § 402–6; Statewide Nontributary Ground Water Rules, 2 C.C.R. § 402–7. The water court here found that the water sought by the Well Company's decree application was not shown to be nontributary. We will not disturb a water court's factual determinations on appeal unless the evidence is wholly insufficient to support those determinations. *See Board of County Comm'rs v. Upper Gunnison River Water Conservancy Dist.*, 838 P.2d 840, 847 (Colo.1992).

The water court was also correct in concluding that no ambiguity existed in the deed language. Regardless of what the grantor intended, the plain reservation language of the deed is restricted to nontributary water, and the meaning of this specific language is ascertainable within the instrument's four corners. *See USI Properties East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo.1997) (court must construe unambiguous language of a legal document in accordance with its plain meaning).

 Moreover, even if an ambiguity were to exist, a court should construe deed reservations by developers, who have the duty to demonstrate an adequate water supply as part of the subdivision approval process, in favor of homeowners or a community water provider benefiting the homeowners. Doubtful words and provisions in a water contract or deed are to be construed against the grantor who selected the terms therein. *See Wyatt v. The Larimer & Weld Irrigation Co.*, 18 Colo. 298, 313, 33 P. 144, 149 (1893).

The Well Company assumed the risk that the quitclaim deed might be insufficient to sustain a well permit or decree application. The fact that Denver Basin aquifer water underlying particular property could be classified as not nontributary under the law,

instead of nontributary, was known at the time the Well Company took the quitclaim deed from the Development Company in 1992 and applied for a water court decree in 1993. For example, in our 1990 decision in *Castle Meadows*, 791 P.2d at 1110, we discussed the use of not nontributary Denver Basin water and dealt with questions from the water court concerning an augmentation decree for its use.

In ruling on the application in this case, the water court correctly determined that the deeds from the Development Company to the homeowners did not explicitly retain in the Development Company any rights except as might pertain to nontributary ground water underneath the homeowners' lots.

### D.

*Retroactivity of Senate Bill 96–74*

 Adopted prior to the trial of this case, Senate Bill 96–74 amended the definition of nontributary ground water to state, as a matter of law, that "not nontributary ground water ... in the Denver Basin shall not become nontributary ground water as a result of the aquifer's hydrostatic pressure level dropping below the alluvium of an adjacent stream due to Denver Basin well pumping activity." § 37–90–103(10.5). The Well Company relied on precisely this type of evidence to rebut the state engineer's finding that the Arapahoe aquifer water sought to be adjudicated is not nontributary. Adhering to the plain language of this statute, the water court upheld the state engineer's determination that the aquifer underlying the subdivision was not nontributary.

Like the other standards and requirements applicable to use rights for Denver Basin water, this legislative prescription functions to maintain surface supply to prior appropriators as depletions occur. Thus, has the General Assembly acted to prevent later users of this ground water resource from claiming changed conditions, due to well pumping, as a reason to classify the water as nontributary and avoid the augmentation plan decree requirements applicable to not nontributary water. This decision is within the legislature's plenary power.

The Well Company asserts that the legislature intended to give the provisions of Senate Bill 96–74 prospective effect only. We disagree. The provisions of Senate Bill 96–74 addressed an issue that had arisen in prior augmentation cases involving not nontributary Denver Basin water in the context of considering an alleged break in the aquifer's connection with the natural stream system. *See Simpson v. Yale Invs., Inc.*, 886 P.2d 689, 698 (Colo.1994). The legislature was undoubtedly aware of this issue and chose to resolve it, because the statutory language of Senate Bill 96–74 is specifically tailored to address the theory raised in *Yale Investments.*[13] Under these circumstances, we view Senate Bill 96–74 as demonstrating clear legislative intent that its terms should apply to pending decree and permit applications.

■ The Well Company argues that Senate Bill 96–74, if applied retroactively in this fashion, violates Colo. Const. art. II, § 11, which states that "[n]o ex post facto law, nor law . . . retrospective in its operation . . . shall be passed by the general assembly." But, this prohibition "applies solely to statutes which take away or impair a vested right acquired under existing laws or create a new obligation or impose a new duty or attach a new disability in respect to transactions or considerations already past." *Vail v. Denver Bldg. & Constr. Trades Council*, 108 Colo. 206, 214, 115 P.2d 389, 393 (1941). The Well Company had no vested right to use the Arapahoe aquifer water underlying the homeowner's lots at the time Senate Bill 96–74 was enacted. Inchoate rights may be validly affected by legislation which alters the litigation posture of the parties to pending litigation, at times dramatically. *See Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1477 (10th Cir. 1984).

■ We also reject the Well Company's contention that the legislature cannot disturb the intent and expectations of the parties to these deeds, who believed the waters of the Arapahoe aquifer to be nontributary at the time of their execution. Since the General Assembly has plenary power over the allocation and use of nontributary water, *see Bayou Land*, 924 P.2d at 147; *American Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 369 (Colo.1994), it may subject the vesting of use rights in such water to whatever requirements it may design.

The General Assembly recognized in Senate Bill 5 that the regulatory framework and provisions it there adopted for nontributary water were based upon "the best available evidence at this time." § 37–90–102(2). The legislature thereby anticipated that additional knowledge and future legislative policy could alter the standards for management of ground water in particular basins or throughout the state. A deed may not negate the application of legislative choices to an inchoate right. Even if the General Assembly, the state engineer, and the water court at some time in the past had considered water in the Arapahoe formation to be nontributary, as the Well Company contends, this would not prevent the legislature from reclassifying the water based on additional information or imposing different or additional management criteria prior to the vesting of a use right in the water.

The water court applied Senate Bill 96–74 to this case as the General Assembly intended, and this legislation is not unconstitutional as applied.

## E.

### Effect Of Prior Decree

The Well Company argues that the 1978 augmentation decree for the wells in the subdivision contained a binding declaration that the Arapahoe formation water is nontributary. We do not agree.

---

**13.** We described this theory as follows:

Jehn testified that the connection between the stream and the aquifer was broken in several locations and that further areas of disconnection would develop over time. He further stated that the water in the aquifer in the four

sections that are disconnected would be nontributary after 100 years of depletion.

*Yale Investments*, 886 P.2d at 698. As the expert witness for the Well Company in the present case, Jehn essentially repeated this testimony and again asserted this theory as determinative.

Because the published resume in connection with the application failed to give adequate notice, the water court found that the 1978 decree was void insofar as it purported to adjudicate the Arapahoe aquifer water beneath the subdivision as nontributary. Under section 37–92–302(3)(a), 10 C.R.S. (1997), all applications for water rights are to be compiled by the water clerk and published in the form of a resume which includes the name and address of the applicants, a description of the water rights involved, and a description of the rulings sought.

Resume publication is intended to "give notice of the nature, scope and impact of the decree sought, thereby enabling any interested person to file a statement of opposition and contest the factual or legal grounds for issuance of such a decree." *Monaghan Farms v. City & County of Denver*, 807 P.2d 9, 17 (Colo.1991). "The reasonableness of the notice is determined by an inquiry standard: whether the notice is sufficient to reveal to potential parties the nature of the claim being made, so that they may determine whether to participate in the proceedings and conduct further inquiry into the full extent of those claims." *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 38 (Colo. 1997).

In *Stonewall Estates v. CF & I Steel Corp.*, 197 Colo. 255, 592 P.2d 1318 (1979), an applicant for an underground water right failed to specify in its application that the water sought to be withdrawn was nontributary. Similar to the circumstances here, the water court nevertheless found that the water was nontributary and issued a decree confirming some conditional and some absolute rights to the water. Several years later the applicant submitted its application for an absolute decree to the water, and the published resume

then stated that the water claimed was nontributary. Several parties filed statements of opposition, alleging that they had been unaware previously that the claimed rights were to nontributary water. The water court set aside the prior decree on the ground that it had lacked jurisdiction due to the defective resume, and we affirmed. We stated that the resume "suffered from such a defect that it was a nullity," and that the decree "was entered without jurisdiction and was Void." *Id.* at 259, 592 P.2d at 1320.

Although an incorrect determination that is within the jurisdiction of the water court cannot be collaterally attacked, a claim or issue adjudicated without proper notice cannot be given effect. *See Williams v. Midway Ranches Property Owners Ass'n, Inc.*, 938 P.2d 515, 524 (Colo.1997). Therefore, the water court was correct in concluding that the prior decree was not *res judicata* in regard to the issue of whether the water beneath the subdivision was nontributary, due to lack of resume notice.[14]

## III.

The Development Company did not own the Arapahoe aquifer ground water underneath the subdivision, and, since it did not perfect a right to use the water in compliance with the applicable statutes, it conveyed no water right to the Well Company. The Arapahoe aquifer water underneath the subdivision is not nontributary. The deeds of the Development Company retained, at most, only the inchoate right to extract and use nontributary ground water. The homeowners retain the inchoate right to withdraw and use the not nontributary water beneath their lands, and they have not consented to the application. We therefore uphold the

---

**14.** We reject the Well Company's contention that the property owners cannot attack a decree which benefits them. This argument fails to recognize that the augmentation decree benefiting the property owners was amended, pursuant to proper resume notice, for a Laramie–Fox Hills well. The property owners are not relying on the decree for Arapahoe aquifer augmentation water.

Likewise, we do not consider the Well Company's argument that the state engineer unlawfully revoked its Arapahoe aquifer well permit. Revocation of the permit is moot. The Well Company did not establish that the homeowners consented to extraction of not nontributary Denver Basin water under their lots. Neither the state engi-

water court's order dismissing the Well Company's application.[15]

neer nor a court could recognize the validity of such a permit.

15. We deny the motion of the homeowners to this court for attorneys fees; though the appeal lacks merit, it was not frivolously brought. *Cf. Southeastern Colorado Water Conservancy Dist. v. Cache Creek Mining Trust,* 854 P.2d 167, 177 (Colo.1993).