109 P.3d 154 (2005)
Opposer-Appellant: EAST CHERRY CREEK VALLEY WATER AND SANITATION DISTRICT,
v.
Applicants-Appellees: RANGEVIEW METROPOLITAN DISTRICT and the State of Colorado, acting by and through its State Land Board, and
Opposers-Appellees: Jim Hall, Acting Division Engineer, Water Division No. 1; and Hal D. Simpson, State Engineer.
No. 04SA6.
Supreme Court of Colorado.
March 28, 2005.
*155 Friedlob Sanderson Paulson & Tourtillott, LLC, William B. Tourtillott, Brian M. Nazarenus, Roger T. Williams, Denver, for Opposer-Appellant.
Petrock & Fendel, P.C., Frederick A. Fendel, III, Carmen S. Hall, Denver, for Rangeview Metropolitan District.
John W. Suthers, Attorney General, Lusanna J. Ro, Assistant Attorney General, Resource Conservation Unit, Natural Resources and Environment, Denver, for State Board of Land Commissioners.
Harvey W. Curtis, David L. Kueter, Sheela Parameswar, Denver, for Amicus Curiae Denver Wells, LLC.
COATS, Justice.
East Cherry Creek appealed directly to this court from an order of the water court, construing and modifying a 1985 decree that adjudicated use rights to nontributary Arapahoe aquifer ground water. In its current order, the water court authorized Rangeview, the state's lessee, to construct additional wells as necessary to withdraw the state's full, decreed entitlement, and it removed the volumetric limits of the original decree on individual wells. The court reasoned that statutory and rules changes subsequent to the decree would permit Rangeview greater flexibility in exercising the water use right than was contemplated by the decree, and *156 that absent a showing of injury, there was no impediment to modifying the prior decree.
Because the state was entitled to an adjudication of its right to use the full amount of available nontributary ground water underlying its lands, without making a threshold showing of a non-speculative, beneficial use; and because it complied with the procedural requirements for such an adjudication, the water court's order decreeing that use right is affirmed.

I.
The dispute arises from the attempt of the Rangeview Metropolitan District and the State Board of Land Commissioners to be relieved of conditions imposed in a 1985 water decree. The land overlying the nontributary ground water at issue is part of the former Lowry Range and is owned by the state. In 1983, the Board entered into a lease agreement granting Rangeview's predecessor in interest the right to develop the water. East Cherry Creek Valley Water and Sanitation District, in turn, contracted with Rangeview's predecessor for the right to purchase and use up to 4,000 acre-feet per year. After the Board had applied for and received permits for seventeen wells, it, along with Rangeview's predecessor in interest and East Cherry Creek, sought a decree for all of the unappropriated nontributary water recoverable from the Arapahoe aquifer underlying the property.
In an order dated June 28, 1985, the water court found that "there was 6,850 acre-feet per annum of water available in the Arapahoe aquifer" underlying the land in question. It then declared an "annual appropriation" for each of the seventeen wells, amounting in all to 85% of the available water. It also declared that each well would be an "alternate point of diversion" for each other well, and further that the amount of water pumped from any one well could not exceed 125% of the annual appropriation for that well in any one year; that the total amount pumped through all wells in the aquifer in any one year could only exceed the sum of the annual appropriations for all existing wells in that aquifer if no more than one well was constructed, in which case that well could still pump 125% of its appropriation; and that over any moving five-year period, the amount pumped from any one well could not exceed five times its annual appropriation.
The order limited the sum of "annual appropriations" for the permitted wells to 85% of the available water on the rationale that those wells were not suitably located to withdraw water underlying lands in one particular section of the state's property; and it declared that the applicants would be entitled to construct more wells "to completely drain or dewater the Arapahoe aquifer under the land described in the application," pursuant to well applications with the state engineer and in accordance with the terms and conditions of the decree. In a separate provision, which the water court in the current application construed to apply to all new wells, the original order also indicated that any well drilled at a location more than 200 feet from a decreed point would be deemed not to have been drilled at the decreed point of diversion and would require a well permit and a proceeding in the water court to change the point of diversion.
In 1994, Rangeview and the Board filed an Application for Change of Water Rights, seeking the right to construct additional wells and to be relieved of the limitations of the original decree on the amount of water that could be withdrawn from each individual well location. The application was opposed by the state and division engineers and by East Cherry Creek, but it lay dormant until September 2002, when the co-applicants revived it in response to a motion by East Cherry Creek to dismiss with prejudice. In August 2003, after a two-day trial, the water court granted the application and, in November, modified its order to account for this court's discussion of the anti-speculation doctrine in Colorado Ground Water Commission v. North Kiowa-Bijou Groundwater Management District.[1]
The water court rejected the assertion of East Cherry Creek that the requested *157 changes would cause injury to rights it had acquired both by contract and by the course of conduct of the parties. The water court also rejected East Cherry Creek's assertion that amending the decree as requested would entitle Rangeview to withdraw additional water without demonstrating a non-speculative, beneficial use to which it would be put. The court did so initially on the ground that the anti-speculation doctrine applied only to water rights acquired through prior appropriation or a system of modified prior appropriation; but in its amended order, it held that even if the doctrine were intended to apply to nontributary ground water, it could apply only to "new appropriations," which the water court found were not decreed in this action.
Despite Rangeview's characterization of its application as an Application for Change of Water Right, the water court held that its order did not effect a statutory change of water rights but merely declared the rights to which Rangeview had become entitled by a combination of the 1985 Decree, statutory amendments since the decree, and State wide Nontributary Groundwater rules. It similarly rejected the assertion that if not a change of water right, the order necessarily granted equitable relief from the prior decree, without Rangeview's having met the conditions of C.R.C.P. 60(b).
East Cherry Creek appealed directly to this court, challenging the water court's order in the absence of a demonstration of non-speculation.

II.
The right to use nontributary ground water, unlike surface water, is not allocated by a system of prior appropriation, nor even by the statutory system of modified prior appropriation, governing designated ground water outside the Denver Basin. See N. Kiowa-Bijou, 77 P.3d at 71-72; Bayou Land Co. v. Talley, 924 P.2d 136, 147-49 (Colo.1996). In a series of enactments, specifying a formula for determining the amount of nontributary ground water available for use; limiting those entitled to apply for a well permit to withdraw it; and ultimately declaring an intent that nontributary ground water be allocated solely on the basis of overlying land ownership rather than by prior appropriation, the legislature created an inchoate right to control and use a specified amount of nontributary ground water in the owner of the overlying land. Bayou Land Co., 924 P.2d at 149. Until the right to use nontributary ground water vests, however, it remains subject to termination by the legislature. Id.
The overlying landowner may acquire a vested right to use such ground water by constructing a well in accordance with a permit from the state engineer, N. Kiowa-Bijou, 77 P.3d at 71-72; Bayou Land Co., 924 P.2d at 149; however, the acquisition of a vested right is not dependent upon the construction of a well. The overlying landowner may also acquire a vested use right by adjudication in the water court. N. Kiowa-Bijou, 77 P.3d at 71. A court decree defines the annual amount of withdrawal to be allowed by the state engineer, see § 37-90-137(4)(d), C.R.S. (2004); § 37-92-305(11), C.R.S. (2004), but it does not imply any obligation to construct a well or withdraw and use the decreed water within any specific period of time.
By statute, adjudication proceedings may be commenced at any time and may include the determination of a right to underlying nontributary ground water, not only for existing, but also for future, uses. § 37-90-137(6). Unlike a conditional use right, a determination of rights to nontributary ground water does not require the water court to set a date for the initiation of a withdrawal project or the applicant to show reasonable diligence in completing one. § 37-92-305(11). Although a decree controls the amount of annual withdrawal that may be allowed by the state engineer, and decreed rights to the use of such ground water are deemed to be vested rights, those rights remain subject to legislatively authorized or imposed limitations for preventing waste, promoting beneficial use, and requiring reasonable conservation of such ground water. Id.
*158 With regard to the treatment of nontributary ground water (which by definition excludes ground water located inside the boundaries of designated ground water basins, see § 37-90-103(10.5)), the general assembly has created a clear demarcation between the determination of available water underlying particular lands and the regulation of its withdrawal and use. In doing so, it has assigned specific responsibilities to the water courts and others to the state engineer. While the legislature has also made clear in its declaration, § 37-90-102, and elsewhere throughout the statutory scheme, that nontributary ground water may be withdrawn solely for beneficial uses, see Chatfield E. Well Co. v. Chatfield E. Prop. Owners Ass'n, 956 P.2d 1260, 1270-71 (Colo.1998), it has just as clearly relegated to the state engineer the responsibility for overseeing the use to which that water will be put. See § 37-90-137(1), (2) and (4). Although the legislature has chosen to allow a determination of available ground water (and thereby, the vesting of an overlying landowner's otherwise inchoate right), quite apart from any immediate plans for the water's use, see § 37-90-137(6); § 37-92-305(11), it has prohibited withdrawal without the engineer's permit, which necessarily entails a proposal for, and ultimately a demonstration of, beneficial use. See § 37-90-137(4).
The anti-speculation doctrine, which was first developed as a limitation on conditional decrees and which mandates a threshold showing of a proposed non-speculative, beneficial use before the development of a water project, is not applicable to a judicial determination of available nontributary ground water, as a matter of legislative design. The protection of potential appropriators is unnecessary in this context because, by statute, there can be none, see § 37-90-102(2); protection against waste at this stage is unnecessary because, by statute, a structure to withdraw nontributary ground water may not be constructed without satisfying the state engineer of a non-speculative, beneficial use to which the water will be put, see § 37-90-137(4); and perhaps most importantly, to require a showing of non-speculative, beneficial use at an adjudication proceeding would thwart a clearly expressed legislative intent to permit adjudication for future uses without a corresponding obligation to develop them. See § 37-90-137(6); § 37-92-305(11). Although, to be sure, adjudication results in a vested right, the legislature has nevertheless reserved the authority to modify such a right if necessary to prevent waste, promote beneficial use, or require reasonable conservation. § 37-92-305(11).
In North Kiowa-Bijou we reached a different conclusion with regard to the availability of designated ground water in the so-called Denver Basin aquifers. In light of the particular statutory scheme governing the allocation and use of that narrow class of ground water, see §§ 37-90-107 to -108, we held that anti-speculation is a concern, even in the commission's determination of the amount of ground water underlying particular lands. N. Kiowa-Bijou, 77 P.3d at 80. Unlike nontributary ground water, however, the legislature's treatment of Denver Basin designated ground water does not provide the same clear division of responsibilities or the same clear intent to permit the adjudication of a vested right without also acquiring a permit to withdraw and use the decreed water.
In sharp contrast to nontributary ground water, designated ground water is regulated by the state ground water commission. See §§ 37-90-104 to -108. Although designated ground water in the Denver Basin aquifers is allocated on the basis of overlying land ownership, in the manner of nontributary ground water rather than other designated ground water, the commission has the dual responsibility of determining availability and issuing permits for its withdrawal. § 37-90-107(7)(a) and (8). While a conditional well permit is still a prerequisite to withdrawing and using the water, see § 37-90-107(7)(d), and application for a well permit requires a showing of beneficial use, id., the statutory scheme for designated ground water does not evince any intent to permit adjudication of a use right without plans for development and use of the resource.
Unlike nontributary ground water, the statutes governing Denver Basin designated ground water not only fail to place the authority *159 for determining availability and issuing well permits in different bodies; they also fail to sanction the "adjudication" of vested rights for "future" uses or to excuse showings or findings of reasonable diligence following a determination of availability. In the absence of any clear expression of legislative intent to permit the adjudication of a vested right to an amount of underlying Denver Basin designated ground water, separate and distinct from obtaining a conditional permit and diligently constructing a well to extract and apply the water to a beneficial use, we found a threshold showing of a non-speculative, beneficial use to be required, prior even to a determination of availability by the commission, in order to prevent waste and promote beneficial use. The same concerns do not arise in the general assembly's significantly different treatment of nontributary ground water.

III.
When the water court issued its original decree, only days before the adoption of Senate Bill 5,[2] it was without the benefit of substantial legislative clarification and codification of the state's law governing nontributary ground water, occurring since that time. The water court was without the legislature's current guidance concerning the duties of the state engineer and the corresponding limitations on the function of water courts in this context. In an apparent attempt to allocate the available ground water on the basis of overlying landownership, while still preserving the ground water resources from waste, the court fashioned a hybrid order, couching its decree in terms of the system of prior appropriation and imposing conditions consistent with that system of allocation.
More specifically, the water court determined the amount of unappropriated nontributary ground water on the basis of an aquifer life of 100 years, but decreed "annual appropriations" to individual well sites, treating them as separate "points of diversion." The court imposed specific limitations on individual wells, including some conditions that were in conflict with permits already issued by the state engineer; and it ordered the engineer to issue new permits in accordance with the terms and conditions of the court's decree. Rather than decreeing to the applicants the full 6,850 acre-feet per annum of water it found to be available in the Arapahoe aquifer underlying the described acreage, the court merely decreed to the applicants the right to divert their waters through the listed wells, at the listed locations, and in the amounts and at the rates specified.
As the water court in the current proceeding expressly recognized, judgments and decrees entered prior to July 1, 1985 with respect to nontributary ground water must be given full effect and enforced according to their terms. See § 37-92-203(1). Such prior decrees were not nullified or superseded by subsequent statutory changes, but at the same time, an overlying landowner is in no way barred from an adjudication of the full amount of nontributary ground water to which he is statutorily entitled, merely because he had already been decreed the use of a portion of that amount. While the statutory provisions creating an inchoate right in overlying landowners preserve the pre-existing vested use rights of others, see § 37-90-137(2) and (4), the scheme cannot be reasonably understood to reduce the underlying nontributary ground water available to a landowner as a result of his own prior decree.
Here, the water court decreed the full amount of nontributary ground water previously determined to be available (adjusted slightly for changed conditions[3]), without restricting its allocation to particular wells. Its order merely clarified that the applicant was not limited to a specific number or particular locations of wells for the withdrawal of the decreed water, as long as all were permitted by the state engineer, according to statute; and in contrast to the 1985 decree's limitation on the amount of water that could be withdrawn *160 from each well during any moving five-year period, the current order made clear that the applicants would be permitted to "bank" water from year to year, as permitted by existing statutes and ground water rules.[4]
Because the 1985 decree was couched (at least in part) in terms of prior appropriations, the applicants captioned their motion as an Application for Change of Water Right. The water court made clear, however, that it was not granting any relief requiring a change of water right, as contemplated by statute, and it therefore did not demand the showings necessary for such a change. While it found that the vested rights of others would not be materially injured, a prerequisite to withdrawal and use, the water court did not require Rangeview and the Board to establish historic consumptive use, as would have been required for a change of water right. State Eng'r v. Bradley (In re Application of Water Rights in Rio Grande County), 53 P.3d 1165, 1169 (Colo.2002). In fact, by decreeing the full amount of available water underlying the state's entire acreage, without the individual well restrictions of the prior decree, the water court arguably enlarged the applicants' exiting use right. Nevertheless, the applicants were entitled to adjudication of the full amount of available nontributary ground water underlying the state's land because they complied with the statutory procedures for a new decree and because no threshold showing of a non-speculative, beneficial use was required.
Although the water court's order made occasional reference to "modifying" the 1985 order, and incorporated a proposed order of the applicants, enumerating the "banking" privileges currently permitted by Rule 8.A of the Statewide Nontributary Ground Water Rules, in context the order can only be reasonably understood to adopt the finding of availability (with minor, stipulated modifications) of the 1985 order and make clear the applicants' entitlement to the full amount, administered according to existing statutes and rules. The current order does not attempt to remove the restrictions of the 1985 order and permit the operation of existing wells in excess of those restrictions, without the further permission of the state engineer.

IV.
As the water court intended, the effect of its decree is therefore to grant the state a vested right to the use of the available nontributary ground water underlying its lands, not previously decreed to any other appropriator, subject to currently existing statutes and rules governing its withdrawal and use. Because the applicants effectively complied with the procedural requirements for the adjudication of a use right to nontributary ground water and because they were entitled to a vested use right to the described water, even without making a threshold showing of a non-speculative, beneficial use, the order of the water court is affirmed.
NOTES
[1] 77 P.3d 62 (Colo.2003).
[2] SB 5, ch. 285, sec. 3, § 37-90-137 (July 1, 1985), 1985 Colo. Sess. Laws 1160 (codified as amended at section 37-90-137, C.R.S. (2004)).
[3] By stipulation with the state engineer, the amount of available ground water was revised downward by 911.8 acre-feet to a revised total of 5,938.2 acre-feet per annum.
[4] Rule 8.A of the Statewide Nontributary Ground Water Rules, 2 C.C.R. 402-7, provides the banking rights for nontributary ground water. It states:

[T]he allowed annual amount of withdrawal may exceed the allowed average annual amount of withdrawal as long as the total volume of water withdrawn from the well or wells does not exceed the product of the number of years since the date or dates of issuance of the well permit or permits or the date or dates of determination or determinations of right to ground water by the water court, whichever comes first, times the allowed average annual amount of withdrawal.